IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re LORDSTOWN MOTORS CORP. SHAREHOLDER DERIVATIVE LITIGATION | Lead Case No. 1:21-cv-00604-SB (Consolidated with Case Nos. 1:21-cv-00724-SB, 1:21-cv-00910-SB, and 1:21-cv-01010-SB) |

Blake A. Bennett, Michael I. Fistel, Jr., COOCH AND TAYLOR, Wilmington, Delaware; Peter B. Andrews, Craig J. Springer, David M. Sborz, ANDREWS & SPRINGER LLC, Wilmington, Delaware; Benny C. Goodman, III, Erik W. Luedeke, ROBBINS GELLER RUDMAN & DOWD LLP, San Diego, California; Ryan M. Ernst, BIELLI & KLAUDER, LLC, Wilmington, Delaware.

*Counsel for Plaintiffs.*

Jonathan A. Choa, Michael A. Pittenger, POTTER ANDERSON & CORROON, LLP, Wilmington, Delaware; Raymond J. DiCamillo, RICHARDS, LAYTON & FINGER, PA, Wilmington, Delaware.

*Counsel for Defendants.*

### MEMORANDUM OPINION

March 7, 2021

BIBAS, *Circuit Judge*, sitting by designation.

A ruling in one case can change the course of another. To avoid needless toil, courts can stay one until the other is resolved. But to tell needless from needed toil, judges must weigh several factors. The balance here tips in favor of a limited stay. So I grant one.

## I. BACKGROUND

Lordstown Motors plans to make electric pickup trucks. D.I. 25 ¶¶ 2–4. It boasted that consumers would swarm to buy its trucks. *Id.* ¶¶ 6–7. Presumably as a result of that, investors bought its stock. *Id.* ¶¶ 9–13.

But Lordstown may have exaggerated how quickly it could make the trucks and how many people would want them. *Id.* ¶ 14. So a shareholder class sued the company in Ohio, alleging securities fraud. Consol. Am. Compl., *Rico v. Lordstown Motors Corp.*, No. 21-616 (N.D. Oh. Sept. 10, 2021), D.I. 61. Meanwhile, other shareholders sued Lordstown's bosses in Delaware, alleging that they had contributed to the company's fraud, breached fiduciary duties, and unjustly enriched themselves. D.I. 25 ¶ 1.

Lordstown moved to dismiss the Ohio case. Mot. to Dismiss, *Rico*, No. 21-616 (N.D. Oh. Nov. 9, 2021), D.I. 70. And it asks me to stay the Delaware case until the Ohio Court decides that motion. D.I. 28. Because a short stay will limit prejudice while streamlining this case, I will grant one. But before I do that, there is an unripe claim that I must dismiss.

## II. I DISMISS THE UNRIPE CONTRIBUTION CLAIM

Article III of the Constitution limits the cases and claims that federal courts can hear. § 2. One such limit is the ripeness doctrine. *Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 57 n.18 (1993). Federal judges may not review claims that are unripe—ones that "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal

quotation marks omitted). *But see* D.I. 35 at 2 (citing, in part, *state* law on ripeness).

Here, the shareholders' contribution claim depends on "contingent future events." The shareholders claim contribution from the Lordstown bosses, but only "[i]f [Lordstown] is found liable" for Exchange Act violations in the Ohio case. D.I. 25 ¶ 208; 15 U.S.C. § 78u-4(f). Judgment has not been entered in that case yet. So the shareholders' claim depends on a cascade of uncertain future events: that the Ohio action does not settle before judgment, barring contribution; that the court finds Lordstown liable; and that the court also finds that the Lordstown bosses "knowingly committed" a securities violation. *Id.* § 78u-4(f)(2)(A), 4(f)(7); *see also Pall v. KPMG, LLP*, 2006 WL 2800064, at *3 (D. Conn. Sept. 29, 2006). Thus, this claim is not ripe. And though neither party raised it, ripeness is "sufficiently important" that I must raise it on my own. *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003). So I notified the parties and solicited supplemental letter briefs on ripeness.

Plus, many courts have found the same when a claim seeks contribution for *another* court's forthcoming judgment. *See, e.g., Pall*, 2006 WL 2800064, at *3 (dismissing contribution claim as unripe until judgment in other action); *DiBattista v. Greco*, 2021 WL 327399, at *7 (D. Del. Jan. 31, 2021), *report and recommendation adopted*, 2021 WL 5061720 (D. Del. Feb. 17, 2021) (same); *In re Cendant Corp. Derivative Action Litig.*, 96 F. Supp. 2d 394, 397 (D.N.J. 2000) (dismissing similar contribution claim when defendant still had "no current obligation to pay"); *see also Sea-Land Serv., Inc. v. United States*, 874 F.2d 169, 171 (3d Cir. 1989) (same principle for common-law contribution claims).

3

Because this claim is unripe, I must dismiss it. True, "ripeness doctrine is drawn both" from the constitutional limits "on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno*, 509 U.S. at 57 n.18. Though prudential limits can be overridden, constitutional ones cannot. *See id.* And this claim involves the latter: its flaw is the absence of an "actual or threatened injury [that] … is likely to be redressed by a favorable decision." *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 472 (1982) (internal quotation marks omitted). This injury is, "at an irreducible minimum," a constitutional requirement. *Id.*

But because the claim may ripen later, I dismiss it without prejudice. The shareholders do not need to bring this claim here to "preserve [Lordstown's] right to contribution." D.I. 35, at 2. If the Lordstown officers are found liable for fraud in Ohio, they can move to add this claim back in. *See, e.g.*, *Tansey v. Rogers*, 2016 WL 3519887, at *1 (D. Del. June 27, 2016) (amending complaint with a contribution claim after liability found in sister securities class action).

### III. I STAY THIS CASE UNTIL THE OHIO MOTION IS RESOLVED

On to the main event: the stay. I have discretion to grant stays. *Janklow ex rel. Stericycle, Inc. v. Alutto*, 2018 WL 6499869, at *2 (D. Del. Dec. 11, 2018) (citing *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985)). In deciding, I ask if a stay would simplify the case, avoid undue prejudice to the shareholders, and promote judicial economy. *Id.*

4

### A. A stay may simplify this case

Even without the contribution claim, the Ohio class action and this case have "substantially similar" allegations. *In re Twitter, Inc. Shareholder Derivative Litig.*, 2018 WL 3536085, at *3 (D. Del. July 23, 2018), *report and recommendation adopted*, 2018 WL 4326986 (D. Del. Sept. 10, 2018). Both actions involve identical Exchange Act claims against two Lordstown executives. D.I. 25 ¶¶ 196–205; *Rico*, D.I. 61 ¶¶ 469–82 If the Ohio court dismisses those claims, the shareholders may drop them here too. Plus, if the shareholders fall within the Ohio plaintiff class, they will likely be collaterally estopped from asserting any dismissed claims here. *See United States v. Stauffer Chem. Co.*, 464 U.S. 165, 170–71 (1984) ("[C]ollateral estoppel can apply to preclude relitigation of both issues of law and … fact if those issues were conclusively determined in a prior action."). It is too soon to tell.

So dismissing one case would streamline the other. While that does not say whether this or that action should go first, the other two factors weigh in favor of the latter.

### B. A limited stay will not unduly prejudice the shareholders

Though a stay will delay this derivative action, denying one would harm Lordstown far more than granting one would harm the shareholders. *See Alutto*, 2018 WL 6499869, at *2. Denying a stay risks avoidable cost to Lordstown by making it fight a similar battle on two fronts: here and Ohio.

True, this derivative action makes claims not at issue in Ohio—insider selling, unjust enrichment, and breach of fiduciary duties. D.I. 25 ¶ 1. So staying this case

5

delays the shareholders' pursuit of these claims. *See* D.I. 32 at 11–12.

But it should not be delayed for long. Briefing for the Ohio motion to dismiss just finished. *See* Reply, *Rico*, No. 21-616, D.I. 76; *see also Alutto*, 2018 WL 6499869, at *2 (finding similar stay not unduly prejudicial). And any prejudice from that delay is not undue. Even without their contribution claim, the shareholders expressly piggybacked their complaint on the first-filed class action. *See, e.g.*, D.I. 25 at 1 & ¶¶ 51, 149, 151, 178, 186. So they knew the result in Ohio would be important here. And mere delay is not unjust. *See, e.g.*, *Twitter*, 2018 WL 3536085, at *3 (staying despite non-identical claims); *Alutto*, 2018 WL 6499869 at *2 (same).

Likewise, the shareholders' fear that evidence will be "lost or misplaced" does not show undue prejudice. D.I. 32 at 5; *see also In re STEC, Inc. Derivative Litig.*, 2012 WL 8978155, at *8 (C.D. Cal. Jan. 11, 2012). Parties must preserve information for litigation. *Id.* And since the two lawsuits implicate the same facts, a short stay in one is unlikely to spoil evidence relevant to both.

Plus, this is a derivative action with any relief going to Lordstown, so *all* parties benefit from avoiding needless expense to the company. *See id.* at *7. And expense may be avoided here because the outcome in Ohio may "bear … on the prudence of pursuing the derivative action." *Id.*

The shareholders think that I could reduce the cost of parallel proceedings, as other courts have, by coordinating discovery with the Ohio class action. D.I. 32 at 8–9. But the cases showcasing this tactic are clearly distinguishable: they involve conditions conducive to coordinated discovery that are not present here. *See In re*

6

*Galena Biopharma, Inc. Derivative Litig.*, 83 F. Supp. 3d 1033, 1044 (D. Or. 2015) (rejecting stay of one action where the second action was *in the same court under the same judge*); *In re Am. Apparel, Inc. S'holder Derivative Litig.*, 2012 WL 9506072, at *47 (C.D. Cal. July 31, 2012) (coordinating discovery where the parties in one case had agreed to a discovery stay).

Last, the nature of these allegations does not change this calculus. The shareholders point to courts that denied stays when shareholders allege "severe internal control[] deficiencies" out of fear of letting them go unchecked. D.I. 32 at 7 (collecting cases). But even though the allegations in this case are serious, those in the cases the shareholders identify were even more so. *See In re Universal Health Servs. Inc., Derivative Litig.*, 2018 WL 8758704, at *1 n.1 (E.D. Pa. Dec. 10, 2018) (institutionalizing patients against their will "to maximize insurance payouts"); *see In re CytRX Corp. Stockholder Derivative Litig.*, 2015 WL 12745085, at *1 (C.D. Cal. June 24, 2015) (allegations of gross mismanagement as part of a pump-and-dump scheme). Besides, those cases rejected stays pending *final resolution* of sister cases, including appeals—stays far longer than the one I grant here. *In re CytRx*, at *3; *Universal Health*, at *1 n.1; *see also* D.I. 33 at 3–4. Alone, those two cases do not amount to a categorical ban on stays when shareholders bring serious allegations. *See, e.g.*, *Brenner v. Albrecht*, 2012 WL 252286, at *1 (Del. Ch. Jan. 27, 2012).

**C. A stay will promote judicial economy**

One final reason to stay this case: if the overlapping Exchange Act claims are doomed to fail in Ohio, litigating them here is redundant. *See Alutto*, 2018 WL

6499869, at *2. And since this case "is in its infancy," staying it now will not waste spent resources. *Id.* Meanwhile, the Ohio case is fully briefed. *See id.* at *2 (staying derivative action when sister class action was more advanced). So a stay will conserve court resources.

If things change and the Ohio case is severely delayed, the parties can always ask me for leave to file a motion to lift the stay. *See, e.g.*, *In re First Solar Derivative Litig.*, 2016 WL 687138, at *1 (D. Ariz. Feb. 19, 2016).

\* \* \* \* \*

I thus stay this derivative action until the Ohio court decides the pending motion to dismiss in the sister class action. And if it has not done so by September 3, 2022, I ask the parties to update me that following week.